UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 1:08-cr-101 |
| v. ) | |
| ) | Judge Mattice |
| BASILIO JIMENEZ ) | |
| JOHNNY ESPINAL-BISONO ) | |

## MEMORANDUM AND ORDER

Defendants Basilio Jimenez and Johnny Espinal-Bisono filed Motions to Suppress Evidence [Court Docs. 30 & 32] seeking to suppress evidence seized during a traffic stop of their vehicle along I-24 within the Chattanooga, Tennessee city limits. Both Motions to Suppress Evidence raise similar, if not identical issues, and both were referred to Magistrate Judge William B. Mitchell Carter for a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B) and (C) [Court Docs. 34 & 35].

Magistrate Judge Carter held an evidentiary hearing on Messrs. Jimenez's and Espinal-Bisono's Motions to Suppress Evidence and issued a Report and Recommendation in which he recommended that both motions be denied. [Court Doc. 47]. Both Mr. Jimenez and Mr. Espinal-Bisono filed timely identical Objections to Magistrate Judge Carter's Report and Recommendation [Court Docs. 49 & 50], to which the Government filed a Response [Court Doc. 51], and it is those objections which are presently before the Court.

In their papers, the Defendants set forth four different grounds upon which they contend that Magistrate Judge Carter's R & R should be rejected. Those grounds can be

summarized as follows. First, Defendants object to Magistrate Judge Carter's finding that the police had probable cause to stop the Defendant's vehicle based upon a violation of Tennessee Code Annotated §55-8-124(a). In essence, this objection amounts to a challenge to Magistrate Judge Carter's conclusion that Officer Dale Lockhart of the Chattanooga Police Department, the arresting officer, was a credible witness on this point.

Second, Defendants object to Magistrate Judge Carter's conclusion that the length of the traffic stop before one of the Defendants gave consent to search was not unreasonably prolonged and thus violative of their Fourth Amendment rights. Third, Defendants contend that, contrary to Magistrate Judge Carter's conclusion, the scope of the search of Defendants' vehicle exceeded the scope of the consent to search which was provided by Mr. Jimenez. Finally, Defendants object to Magistrate Judge Carter's conclusion that any consent to search which might have been given was not withdrawn before the conclusion of the search.

For the following reasons, the Court will **ACCEPT AND ADOPT** Magistrate Judge Carter's Report and Recommendation [Court Doc. 47], and will **DENY** Messrs. Jimenez's and Espinal-Bisono's Motions to Suppress Evidence [Court Docs. 30 & 32].

**I.     STANDARD OF REVIEW**

The Court must conduct a *de novo* review of those portions of the report and recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C).

## II. FACTS

The relevant facts pertaining to the underlying motions to suppress are exhaustively summarized in Magistrate Judge Carter's Report and Recommendation [Court Doc. 47, pp. 1-10]. Other than a challenge to Magistrate Judge Carter's finding that Officer Lockhart was a credible witness, none of Defendants' objections take issue with his findings of facts *per se,* and thus it would serve no useful purpose to repeat all such facts here. Accordingly, the Court **ADOPTS BY REFERENCE** the facts set forth in Magistrate Judge Carter's Report and Recommendation [Court Doc. 47, pp. 1-10], and will refer to those facts herein selectively, and only as necessary to analyze the issues raised in the Defendants' objections.

## III. ANALYSIS

The Court will address each of Defendants' asserted objections to the Report and Recommendation in turn.

### A. Probable Cause for the Traffic Stop

There is no dispute that the asserted legal basis for the stop of Defendants' vehicle on the date in question was a suspected violation of Tennessee Code Annotated § 55-8-124(a), which provides:

> The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicles and the traffic upon and the condition of the highway.

At the evidentiary hearing, Officer Lockhart testified that he suspected that Mr. Jimenez, the driver of the vehicle in question, violated this statute when Officer Lockhart

observed Mr. Jimenez's vehicle following a Federal Express truck at a distance of approximately two feet while traveling at a speed of approximately 55 miles per hour. In the R & R, Magistrate Judge Carter stated that he found Officer Lockhart's testimony in this regard to be credible, noting that Defendants had presented no contradictory evidence, and that Officer Lockhart's testimony was consistent on this point with that of the other testifying police officers. The Defendants, however, both at the evidentiary hearing and in their instant objections, point out that the videotape from Officer Lockhart's service vehicle, which is supposed to begin capturing a visual image of the scene 30 seconds prior to the activation of the vehicle's emergency equipment, depicts neither the alleged Federal Express truck or the Defendants' vehicle following such truck. Based on this, Defendants argue that Officer Lockhart's testimony is at odds with the visual evidence, and therefore should be rejected. Magistrate Judge Carter addressed this identical argument in the R & R wherein he states:

> The undersigned would prefer to have all traffic violations on videotape when evaluating these motions to suppress. But there has been no evidence presented to suggest that the manner in which the dash cameras are activated (upon turning on the blue lights) is a means to avoid taping traffic violations or that the back-up time on the tapes (30 seconds) has also been shortened to avoid capturing the traffic violations on tape.

[Court Doc. 47, Report and Recommendation, p. 13, n. 2].

The Court has reviewed both the transcript of the evidentiary hearing as well as the videotapes, which were introduced as Government Exhibits 1 & 2. The Court agrees with Magistrate Judge Carter that the fact that the videotape does not capture the image of the Defendants' vehicle following a Federal Express truck in the manner testified to by Officer Lockhart may be unfortunate, but it does not provide an adequate basis upon which the

-4-

Case 1:08-cr-00101-HSM-WBC   Document 53   Filed 09/02/09   Page 4 of 9   PageID #: 241

Court could conclude that Officer Lockhart's otherwise apparently credible testimony is untrustworthy. Accordingly, Defendants' objection in this regard is **OVERRULED**.

B.     **Length of the Stop Prior to Consent**

The Defendants also assert that Magistrate Judge Carter erred in concluding that the length of time which Defendants were detained at the side of the road following the traffic stop, but prior to the time that Mr. Jimenez gave police consent to search the vehicle, was not unreasonably prolonged and therefore did not violate Fourth Amendment standards. More specifically, Defendants apparently take issue with Magistrate Judge Carter's acceptance of the testimony of Officer Lockhart to the effect that at least part of the reason that he suspected the Defendants of being engaged in criminal behavior during the stop was their confusing and suspicious responses to his questions, including those to straightforward inquiries regarding the purpose of their trip and their itinerary.

The Defendants attempt to characterize Officer Lockhart's professed suspicions in this regard as being based on either the Defendants' apparent nervousness (which, without more, may be an impermissible basis upon which to prolong an otherwise completed traffic stop. *See, e.g., United States v. Richardson*, 385 F.3d. 625, 630-31 (6th Cir. 2004) (holding that nervousness is "an unreliable indicator [of illegal activity], especially in the context of a traffic stop," because many citizens become nervous when stopped by police "even when they have nothing to hide or fear"); *United States v. Andrews*, 600 F.2d 563, 566 (6th Cir. 1979) (refusing to consider nervousness in the reasonable suspicion calculation because nervousness is entirely consistent with innocent behavior among

-5-

travelers, and holding that without additional evidence of wrongdoing, nervousness is entitled to no weight)) or on a language barrier.

As Magistrate Judge Carter points out in the R & R, however, his conclusion that the length of the stop was not unreasonably prolonged was based upon his assessment of the totality of the circumstances, which included the Defendants' patently implausible explanations to police regarding the route of their trip. Having reviewed the transcript of the testimony, and having considered the time periods involved as recited in the R & R, and as to which no objection has been made, the Court agrees with Magistrate Judge Carter that the length of the traffic stop - at least prior to Officer Lockhart receiving Mr. Jimenez's consent to search - was not unreasonably prolonged. Accordingly, Defendants' objection to the R & R on this point is **OVERRULED**.

### C. Scope of the Search

Defendants also object to Magistrate Judge Carter's conclusion that the scope of the search of Defendant's vehicle did not exceed the scope of the consent which Mr. Jimenez provided to Officer Lockhart. As the Court reads the Defendants' objection in this regard, it encompasses both a physical and a temporal aspect. As Magistrate Judge Carter correctly observed in the R & R, and as the Defendants acknowledge in their instant objections, "[t]he standard for measuring the scope of the suspect's consent under the Fourth Amendment is that of 'objective' reasonableness - what would the typical reasonable person have understood by the exchange between the officer and the suspect," *Florida v. Jimeno*, 500 U.S. 248, 251 (1991), and the scope of the search is generally defined by its expressed object. *Id*.

Here, there is no dispute that the expressed object of Officer Lockhart's search of the vehicle was for the illegal narcotics which Mr. Jimenez had denied possessing. Many courts, including the United States Supreme Court in *Jimeno*, have held that when the expressed object of a consent search of a vehicle is illegal narcotics, the objectively reasonable scope of the consent is that which would be necessary to detect and investigate hidden compartments within the vehicle which might be used to conceal such contraband. The Court finds it disingenuous for the Defendants now to claim that, having given Officer Lockhart consent to search their vehicle for narcotics, they were surprised when the search entailed the time and effort necessary to at least partially disassemble portions of the vehicle in an effort to locate any such hidden compartments. Officer Lockhart's off-hand comment, made subsequent to the consent and thus clearly not relied upon by Mr Jimenez when he gave such consent, that he would take a "quick" look, does not alter the Court's finding in this regard.

Accordingly, the Court agrees with Magistrate Judge Carter's conclusion that the subject search did not exceed its expressed object, either in terms of time or area, and Defendants' objection to the R & R on this point is **OVERRULED**.

### D. Withdrawal of Consent to Search

The final grounds upon which Defendants object to the R & R is Magistrate Judge Carter's conclusion that Mr. Jimenez did not clearly and unequivocally withdraw his earlier consent to the search of the vehicle prior to the discovery of the narcotics. The Defendants' assertion in this regard is based on the fact that, approximately seven minutes and 39 seconds following the commencement of the search, the videotape depicts Mr. Jimenez

approaching Sergeant Jason Lewis of the Chattanooga Police department, who was by then assisting in the search of the vehicle, and Sergeant Lewis waiving him away. In the R & R, Magistrate Judge Carter acknowledges that there was a dispute in the testimony regarding the significance of these actions. More specifically, Mr Jimenez testified that his approach in this manner was an effort to communicate to the police that he was withdrawing his earlier consent to the search. Sergeant Lewis, on the other hand, testified that immediately prior to the disputed approach, Mr. Jimenez had asked him if there was a problem with the vehicle, and he (Sergeant Lewis) had responded in the affirmative. Based on this, Sergeant Lewis interpreted Mr. Jimenez' attempt to approach him simply as an effort to inquire further as to what might be wrong, and that Sergeant Lewis had rebuffed such effort in the interest of maintaining officer safety while the search was being conducted.

Magistrate Judge Carter, in the R & R, rejected the Defendants' assertion in this regard, based both on his assessment of the relative credibility of Mr. Jimenez and Sergeant Lewis while testifying, as well as his independent observation that, had the Defendants actually wanted to withdraw their earlier expressed consent to the search, they had many more opportunities to communicate to the police their intentions in this regard other than the single, ambiguous incident to which they now point.

The law is quite clear that, even after a consent to search is granted, it may be retracted. *See, e.g., United States v. Buckingham*, 433 F.3d 508, 513 (6th Cir. 2006). It is equally clear, however, that the precision with which such a retraction must be expressed is to be judged against at least the same standard - objective reasonableness - which would apply to the initial grant. As a leading commentator has observed, "the law generally

requires an unequivocal act or statement of withdrawal, and a consent to search is not terminated merely by a worsening of the consenting party's position...." 4 Wayne R. LaFave, Search and Seizure §8.1 (4th ed. 2004 & Supp. 2008-09).

Here, as Magistrate Judge Carter found, the Defendants were presented with a number of opportunities to express clearly to the police their intention to retract their earlier grant of consent to a search of their vehicle for narcotics. They apparently chose not to avail themselves of any of those opportunities, and the Court is unwilling, *post facto*, to attribute such self-serving meaning to the ambiguous actions of Mr. Jimenez. Accordingly, Defendants' objection to the R & R on this ground is also **OVERRULED**.

## IV. CONCLUSION

For the reasons explained herein, the Objections to Magistrate Judge Carter's Report and Recommendation by Defendants Basilio Jimenez and Johnny Espinal-Bisono [Court Docs. 49 & 50] are **OVERRULED**. Magistrate Judge Carter's Report and Recommendation [Court Doc. 47] is **ACCEPTED AND ADOPTED**, and the Defendants' Motions to Suppress Evidence [Court Docs. 30 & 32] are **DENIED**.

**SO ORDERED**, this 2nd day of September, 2009.

                                                            /s/Harry S. Mattice, Jr.
                                                         HARRY S. MATTICE, JR.
                                                         UNITED STATES DISTRICT JUDGE